Mode *v.* State.

4955                                330 S. W. 2d 88

Opinion delivered December 21, 1959.

*Clay Brazil, Hardin, Barton, Hardin & Garner,* for appellant.

*Bruce Bennett,* Atty. General by *Thorp Thomas,* Asst. Atty. General, for appellee.

Sam Robinson, Associate Justice. Appellant, Lee Mode, was charged with first degree murder. He appeals from a conviction of second degree murder.

One of the points argued by appellant is that the evidence is not sufficient to sustain the verdict. This point is not well taken. There was bad blood between Mode and the deceased, Russell. This grew out of Mode's alleged attentions to Mrs. Russell. It appears that on another occasion Russell had taken a pistol away from Mode. The State introduced direct and circumstantial evidence to the effect that Mode stepped from a doorway and shot Russell down. On the other hand, the defense introduced evidence to the effect that Russell made an attack on Mode and in the ensuing struggle Russell was shot; that Mode was acting in self-defense. Mode was carrying a pistol and from the evi-

dence it appears that he was carrying it for Russell. Russell was unarmed. The evidence is convincing that at the time of the killing Russell was returning from the bank where he had made a deposit for Charlie Simon. There is nothing to indicate that he anticipated seeing Mode, but the very fact that Mode was carrying a pistol indicates that he did anticipate seeing Russell. Mode contends that Russell was shot while the two were closely locked in a struggle, but there were no powder burns on Russell. He was shot in the left side of the head, and the doorway from which the State's witness, Calvin Tyler, testified that Mode stepped when Russell was shot, was to Russell's left.

Evidence of Mode's infatuation for Mrs. Russell; the fact that undoubtedly there was bad blood between the two men; that Mode was carrying a pistol and had been for some time; that Russell took one away from him on another occasion; the direct evidence to the effect that Mode was in the doorway when Russell was passing along the street; that Mode stepped from the doorway and the shooting followed; Russell's being unarmed — all taken together is amply sufficient to sustain the verdict.

The defendant pleaded not guilty, but during the trial the killing was not denied, defendant relying on the law of self-defense as justification for the slaying of Russell. Ark. Stat. § 41-2231 provides: "Justifiable homicide is the killing of a human being in necessary self-defense, or in defense of habitation, person or property, against one who manifestly intends or endeavors by violence or surprise, to commit a known felony."

The jury did not accept Mode's version of the killing. Under the evidence in the case the jury could have convicted him of any degree of homicide. On the other hand, the jury could have acquitted him outright on their theory of self-defense. The court gave the jury 17 instructions on the law of homicide and self-defense. Instruction No. 9 is very long, taking up about three pages of the record. It is as follows:

"No. 9. The defendant, Lee Mode, contends that the killing of the deceased, D. L. Russell, was justifiable.

"Justifiable homicide under the law is defined as follows: 'Justifiable homicide is the killing of a human being in necessary self-defense, or in defense of habitation, person or property, against one who manifestly intends or endeavors by violence or surprise, to commit a known felony.'

"The defendant interposes a plea of self defense as a justification for the homicide charged.

"The Court has defined justifiable homicide and will now define the law of self defense and when it may be exercised.

"A bare fear of those offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing; it must appear that the circumstances were sufficient to excite the fears of a reasonable person and that the party killing really acted under their influence, and not in a spirit of revenge.

"In ordinary cases of one person killing another in self defense, it must appear that the danger was so urgent and pressing, that in order to save his own life, or to prevent his receiving great bodily injury, the killing of the other was necessary, and it must appear also, that the person killed was the assailant, or, that the slayer had really and in good faith endeavored to decline any further contest before the mortal blow or injury was given.

"In ordinary cases of one person killing another in self defense, it must appear that the danger was so urgent and pressing, that in order to prevent his receiving great bodily harm, the killing of the other was necessary. But, to whom must it appear that the danger was urgent and pressing? It must so appear to the defendant. To be justified however, in acting upon the facts and circumstances as they appeared to him, he

must honestly believe without fault or carelessness on his part, that the danger was so urgent and pressing that it was necessary to kill the deceased in order to prevent his receiving some great bodily injury or harm.

"No one in resisting an assault made upon him in the course of a sudden brawl or quarrel, or upon a sudden encounter or in a combat, or from anger suddenly aroused at the time it is made or occurs, is justified in taking the life of an alleged assailant, unless he was so endangered by such assault as to make it necessary to kill his assailant to save his own life, or to prevent great bodily injury, and he employed all the means in his power, consistent with his safety, to avoid the danger and avert the necessity of the killing. The danger must apparently be imminent, irremedial and actual and he must exhaust all the means within his power consistent with his safety to exhaust all the means within his power consistent with his safety to protect himself and the killing must be necessary to avoid the danger. If however, the assault was so fierce as to make it apparently as dangerous for him to retreat as to stand, it is not his duty to retreat but he may stand his ground and if necessary to save his own life or prevent his receiving some great bodily injury, slay his assailant.

"The defendant, Lee Mode interposes a plea of self defense. That the killing of D. L. Russell under the circumstances, constituted justifiable homicide. The burden of proof is upon the defendant, Mode, to prove such defense by a preponderance of the evidence.

"If the jury finds from a preponderance of the evidence, that at the time and place of the alleged difficulty resulting in the death of D. L. Russell, the deceased, withot legal justification, made an assault upon the person of the defendant, Lee Mode, under such circumstances indicating an intention upon the part of the deceased to inflict upon the person of defendant, Mode, some great bodily injury or death, and that the circumstances of such alleged assault, if any, were such as to excite the fears of a reasonably prudent person, and that the defendant, without fault or carelessness upon

his part, in reaching a conclusion that danger was not only impending but so pressing and urgent as to render the killing of the deceased necessary, and having exhausted all the means within his power consistent with his safety, and without the use of more force than was necessary under the attending circumstances, as viewed by defendant, honestly and in good faith and not in a spirit of malice or revenge, and in his own necessary self defense, shot and killed the deceased, D. L. Russell, then, if the jury so finds, defendant Mode should be acquitted.''

The defendant objected generally and specifically.

By Instruction No. 9 the jury were told that the burden was on the defendant to prove justifiable homicide by a preponderance of the evidence. Not only did the instruction tell the jury that the burden was on the defendant to prove justifiable homicide by a preponderance of the evidence, but the instruction went further and appears to tell the jury that the burden is on the defendant (1) to prove by a preponderance of the evidence that Russell, the deceased, without legal justification, made an assault upon Mode; (2) to prove by a preponderance of the evidence that the circumstances of such alleged assault, if any, were such as to excite the fears of a reasonably prudent person; (3) to prove by a preponderance of the evidence that the defendant was without fault or carelessness on his part in reaching a conclusion that danger was not only impending but so pressing and urgent as to render the killing of the deceased necessary; (4) to prove by a preponderance of the evidence that defendant had exhausted all the means within his power consistent with his safety; (5) to prove by a preponderance of the evidence that the defendant did not use more force than was necessary under the attending circumstances as viewed by the defendant; (6) to prove by a preponderance of the evidence that he, the defendant, acted honestly and in good faith and not in a spirit of malice or revenge; (7) to prove by a preponderance of the evidence that he acted in his own necessary self-defense.

It was error to instruct the jury that to justify the killing the burden was on defendant to prove self-defense or any element of self-defense by a preponderance of the evidence. Ark. Stat. § 41-2246 provides: "The killing being proved, the burden of proving circumstances of mitigation, that justify or excuse the homicide, shall devolve on the accused, unless by the proof on the part of the prosecution it is sufficiently manifest, that the offense committed only amounted to manslaughter, or that the accused was justified or excused in committing the homicide." Instruction No. 4 given by the court was in the words of the statute.

But the burden is not on the accused to prove justification by a preponderance of the evidence. It is sufficient if the evidence raises a reasonable doubt in the minds of the jurors as to whether the defendant was justified in committing the homicide. By Instruction No. 9 the jury were told in effect that notwithstanding they might have a reasonable doubt whether the defendant acted in necessary self-defense, they could not return a verdict of not guilty unless the defendant had proved self-defense by a preponderance of the evidence. Otherwise, according to Instruction No. 9, the jury could not acquit, although they may have had a reasonable doubt of guilt, if the defendant had not proved by a preponderance of the evidence that he acted in self-defense.

In a long line of cases this Court has held that it is error to instruct the jury in homicide cases where self-defense is asserted as justification for the killing, that the burden is on the defendant to prove the theory of self-defense by a preponderance of the evidence. *Cogburn* v. *State,* 76 Ark. 110, 88 S. W. 822, is directly in point. That case has been cited many times and the rule therein announced has never been impaired. There the court correctly instructed the jury in the first instance in the words of the statute, Ark. Stat. § 41-2231, above mentioned. But the prosecuting attorney incorrectly stated the law to the jury and then the court, over the defendant's objections, affirmed what the

prosecuting attorney had said. In the *Cogburn* case this Court said:

"In commenting on this instruction, the attorney for the State said:

" 'The court tells you, under this instruction, which I read to you, that, the killing being proved, the burden of proving circumstances of mitigation and justification devolves on the accused. Under this law, after we introduced Jim West, we could have rested our case, and the burden was upon them to establish justification; and if they fail to satisfy you by *a preponderance of evidence* that the killing was justifiable, then you should convict him.' To which the defendant objected, and the court said: 'While it is true that if, upon the whole case, they had a reasonable doubt, they must acquit, yet as to matters of mitigation he would be required to furnish *a preponderance of the evidence.'* Now, the argument of the prosecuting attorney, as shown in the record, was not in accordance with the law; for, while it is true, as our statute declares, that when the killing is proved the burden of showing circumstances that mitigate or excuse the crime devolves upon the accused, where there is nothing in the evidence on the part of the State that tends to mitigate, excuse or justify the killing, still the burden on the whole case is on the state; and when evidence is introduced, either on the part of the State or the defendant, which tends to justify or excuse the act of the defendant, then if such evidence, in connection with the other evidence in the case, raises in the minds of the jury a reasonable doubt as to the guilt of the defendant, the jury must acquit. This is settled in this State by the statute which declares that 'when there is a reasonable doubt of the defendant's guilt upon the testimony in the whole case, he is entitled to an acquittal.' Kirby's Dig. § 2387 (Ark. Stat. § 43-2159).

"But if this statement of the prosecuting attorney were correct — that when the killing is proved the defendant must show by a preponderance of the evidence that the. killing was justifiable—the jury would have to

reject his defense whenever it was not supported by a preponderance of the evidence. This would limit the doctrine of a reasonable doubt to the fact of the killing, and when that was established beyond a reasonable doubt it would put the burden on the defendant of establishing justification by a preponderance of the evidence, and if he failed to do so the jury would be required to convict him, even though the evidence adduced by him was sufficient to raise a reasonable doubt as to his guilt. But it cannot be said that the defendant must make out his defense by a preponderance of the evidence, and also that he is entitled to an acquittal if on the whole case the jury have a reasonable doubt of his guilt, for the two propositions are to some extent inconsistent. Testimony not sufficient to establish a fact by a preponderance of the testimony may be sufficient to raise a reasonable doubt as to the existence of the fact. To tell the jury that they must convict unless the fact of self-defense is established by a preponderance of the testimony, and also that they must acquit if they have a reasonable doubt as to whether the defendant acted in self-defense, is telling them to follow two rules which may lead to very different results.

"The statute, it will be noticed, says nothing about the preponderance of evidence. It says that, the killing being shown, the burden is on the defendant to show facts that justify or excuse his homicide. When, however, he introduces his proof, the question, says Mr. Wharton, arises: 'Is it sufficient for him if he raises a reasonable doubt as to the defense he advances? Or must he establish this defense by a preponderance of proof, in order to entitle him to an acquittal?' He answers the question by saying that when the defense traverses some essential ingredient of the indictment, such as malice or premeditation, it is sufficient if the proof raises a reasonable doubt. If the defendant undertakes to show that the act was done in necessary self-defense, this tends to rebut the allegation of malice; and if the jury have a reasonable doubt on that point, they should acquit, for that is a reasonable doubt as to whether an essential charge in the indictment is true or not. It

is otherwise when the defense does not traverse any essential averment of the indictment; for instance, when former conviction or acquittal of the same offense is set up. Wharton's Crim. Neg. §§ 331-334." (Emphasis ours)

In *Tignor v. State*, 76 Ark. 489, 89 S. W. 96, it is said: ". . . though the burden the proving acts of mitigation may devolve on the accused, it is sufficient for him to show facts which raise in the minds of the jury a reasonable doubt as to his guilt."

In *Parsley v. State*, 148 Ark. 518, 230 S. W. 587, the Court held that although only a general objection was made to a like instruction, no specific objection was required.

In *Lovejoy v. State*, 62 Ark. 478, 36 S. W. 575, it was held that preponderance of the evidence and reasonable doubt are not synonymous. The Court said: " 'Preponderance' and 'reasonable doubt' are not synonymous terms. It is sufficient if the proof in the whole case raises a reasonable doubt as to whether the defendant took the cattle with a felonious intent. The state would not be justified in a conviction upon a preponderance of the evidence. Yet this instruction tells the jury, 'that, if they believe from a preponderance of the evidence that the defendant took the cattle under the honest belief that he was the owner,' they should acquit. The converse would be, 'If you do not believe from a preponderance of the evidence' that defendant took the cattle under the honest belief that he was the owner, *etc.*, you should convict. The instruction makes the question of intent, which is the very essence of the crime charged, depend upon the preponderance of the evidence to establish it, whereas it must be established by the state beyond a reasonable doubt. It must not be forgotten that in criminal cases, under the plea of not guilty, every element in the crime is controverted, and the state must affirmatively prove guilt.

" 'It would,' says Mr. Bishop, 'be a wide departure from the humanity of the criminal law to compel a jury,

by a technical rule, to convict one of whose guilt, upon the whole evidence, they had a reasonable doubt. And it would reverse the presumption of innocence to hold a defendant guilty unless, taking the burden on himself, he could affirmatively prove himself innocent. All evidence should be viewed in its entirety, not in detached parts. The whole of an alleged crime must be proved, just as the whole of it must have been committed. In reason, therefore, this whole and indivisible thing, the burden of proof, must be borne by the government throughout the trial.' 1 Bish. Cr. Pro., sec. 1051.''

Appellant argues several other points, all of which we have examined, but we find no error other than the giving of Instruction No. 9.

Reversed and remanded.

Harris, C. J., and Ward and Johnson, JJ., dissent.

Carleton Harris, Chief Justice, dissenting. I agree that Instruction No. 9 was erroneous; however, I do not consider that the objection made was sufficient to properly challenge the instruction. In no part of his objection did appellant specifically object to the use of the word ''preponderance''. His objection was '' * * * that the Court refused to add the provision to said Instruction, that if the evidence adduced by the defendant created a reasonable doubt in the mind of the jurors, then the defendant would be entitled to a reasonable doubt and should be acquitted, on the doctrine of reasonable doubt.'' The court then held that the general instructions on reasonable doubt ''would not only reach self-defense and burden of proof, but also the evidence and all other issues in the case.'' No further objection was made to the instruction. In several cases before this Court, an instruction copying our statute (Ark. Stats., § 41-2246) has been given. Such section reads as follows:

''The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless by proof on the part of the prosecution it is sufficiently manifest that the offense amounted only to manslaughter, or that the

accused was justified or excused in committing the homicide."

In *Tignor* v. *State,* 76 Ark. 489, 89 S. W. 96, and *Hogue* v. *State,* 194 Ark. 1089, 110 S. W. 2d 11, we held that this instruction is proper, if accompanied by an instruction that on the whole case the guilt of the defendant must be proved beyond a reasonable doubt. Except for the use of the word "preponderance", Instruction No. 9 says no more than we have approved on numerous occasions. In the instant case, the court, in Instruction No. 4, quoted § 41-2246, and then added the following:

"Notwithstanding the provisions of the preceding section of law as to burden of proof, the burden of proof in the whole case is upon the State of Arkansas, to prove from the evidence beyond a reasonable doubt the guilt of defendant, as charged and of any degree of crime or homicide included in the information."

Likewise, in Instruction No. 8, the court concluded by instructing the jury that appellant should be acquitted "if you find the defendant not guilty of any degree of murder or homicide, or *if you have a reasonable doubt of his guilt of any degree of homicide.*[1] * * * ". It accordingly appears to me that the court, in giving these two instructions, which properly stated the law as to reasonable doubt, adequately took care of any possible objectionable features in the instruction except for the word "preponderance" — and the use of this word was not objected to by appellant. I therefore do not agree that this case should be reversed because of the giving of Instruction No. 9, and I respectfully dissent to the ruling of the majority.

PAUL WARD, Associate Justice, dissenting. Although I agree with the majority that portions of Instruction No. 9, as pointed out by the majority, were not proper, and although I further agree with the majority that appellant's objection was sufficiently specific to call the court's attention to the erroneous part of the instruction, still it is my opinion that under the state of the record in this case the judgment of the trial court should be affirmed.

---

[1] Emphasis supplied.

*One.* Other instructions of the court contained what appellant asked for. Instruction No. 2 told the jury that the defendant is entitled to the benefit of a reasonable doubt. In Instruction No. 8 the court told the jury that if they had any reasonable doubt as to the guilt of appellant of any degree of homicide or manslaughter they should acquit him. In the same instruction the court also told the jury that in determining the guilt or innocence of appellant they should consider all instructions given by the court.

We have uniformly held that instructions need not be duplicated.

*Two.* Moreover, and most important in my judgment, it appears from the record that appellant waived any possible error that the court may have committed in the giving of the questioned instruction. When the court had finished giving Instruction No. 9, which consisted of some five or six separate paragraphs, appellant made the specific objection that the court refused to add that if the evidence adduced by the defendant created a reasonable doubt in the minds of the jurors then the defendant should be acquitted. Following this the court made this comment: "The court holds that the general instruction on reasonable doubt would not only reach self-defense and burden of proof but also the evidence and all other issues in this case". Apparently, appellant was satisfied with the court's statement because no other instruction was asked for and no further objection was made. In my judgment the court's statement removed all possibility of error. We assume that the statement of the court was made in the presence of the Jury and consequently amounted to a compliance with appellant's request. If it was not made in the presence of the jury, then appellant could have requested that it be reduced to writing and presented to the jury, but no such request was made by appellant. This silence on the part of appellant amounted to trapping the trial court into error. We have repeatedly refused to allow this to be done.

The situation in this case can easily be distinguished from that in the case of *Cogburn* v. *State,* 76 Ark. 110, 88 S. W. 822, which is relied on so heavily by the majority.

In the *Cogburn* case it appears that the reversible error consisted of the court allowing the Prosecuting Attorney to argue to the jury the preponderance rule even though the jury had been instructed to the contrary. If such argument was made by the Prosecuting Attorney in the case under consideration the defense attorneys had a ready and adequate remedy. They could have pointed out the other instructions of the court referred to above and they could have, in particular, referred to the explanation of the court copied above in which the court stated that the "reasonable doubt" rule applied to self-defense.